1 | DONALD J. QUERIO (State Bar No. 54367)
MARY KATE SULLIVAN (State Bar No. 180203)
2 | PETER H. BALES (State Bar No. 251345)
SEVERSON & WERSON
3 | A Professional Corporation
One Embarcadero Center, Suite 2600
4 | San Francisco, CA 94111
Telephone: (415) 398-3344
5 | Facsimile: (415) 956-0439

6 | Attorneys for Defendant
WELLS FARGO AUTO FINANCE, INC.

7

8 | UNITED STATES DISTRICT COURT

9 | NORTHERN DISTRICT OF CALIFORNIA

10 | SAN JOSE DIVISION

11

SANTIAGO SANCHEZ, an individual,

12 | Plaintiff,

13 | vs.

14 | WELLS FARGO AUTO FINANCE, INC.; and
15 | DOES 1 through 100, inclusive,

16 | Defendants.

State Case No.: 108CV117118

**NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1441, 1446**

Date Action Filed: July 11, 2008

17 | TO THE CLERK OF THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE

18 | DIVISION, and PLAINTIF AND HIS ATTORNEY OF RECORD:

19 | Defendant, Wells Fargo Auto Finance, Inc. ("Wells Fargo") files this Notice of Removal

20 | under 28 U.S.C. § 1441 and § 1446. As grounds for the removal, the Wells Fargo states as

21 | follows:

22 | **Jurisdiction**

23 | 1.      This Court has original jurisdiction over this action under 28 U.S.C. § 1331, and

24 | this action can be properly removed under 28 U.S. § 1441, because the Plaintiff has asserted a

25 | claim arising under the laws of the United States. Plaintiff has alleged a violation of 15 U.S.C. §

26 | 1601, et seq., the Truth in Lending Act ("TILA"), which provides this Court with federal question

27

28

07515/0119/682344.1

Notice of Removal

1    jurisdiction.  Pursuant to 15 U.S.C. § 1640(e), TILA actions may be brought "in any United States

2    district court..."

3        Thus, Defendant seeks a proper removal of this action from the Superior Court of

4    California, County of Santa Clara, to the Northern District of California, San Jose Division.

5        **Basis for Removal**

6        2.    On July 11, 2008, Plaintiff Santiago Sanchez filed a complaint against Defendant

7    Wells Fargo Auto Finance, Inc. in the Superior Court of California, County of Santa Clara, Case

8    No. 108CV117118.

9        3.    Wells Fargo was served was personally served on July 14, 2008,  making service

10   effective on that date.  Cal. Civ. Proc. Code § 415.10.

11       4.    In paragraphs 78-83 of the complaint, Plaintiff alleges a civil claim arising under

12   violation of 15 U.S.C. § 1601, et seq., the Truth in Lending Act.  (Compl., ¶¶ 78-83.)

13       5.    The Truth in Lending Act claim arises under the laws of the United States.  As

14   such, this Court has original jurisdiction over those claims under 28 U.S.C. § 1331.

15       6.    In addition, the Plaintiff's State Court Action may be removed to federal court

16   under 28 U.S.C. § 1441(a)(b), as the claim is a civil action over which this Court has original

17   jurisdiction.

18       7.    This Court has supplemental jurisdiction over all other claims asserted by plaintiff

19   in accordance with 28 U.S.C. §§ 1367(a) and 1441(c).

20       **Compliance with 28 U.S.C. § 1446**

21       8.    As required by 28 U.S.C. § 1446(a), the Defendant has attached as Exhibit A true

22   and correct copies of all process, pleadings and orders served on the Defendant.

23       9.    This Notice of Removal is timely under 28 U.S.C. § 1446(b) because the Wells

24   Fargo has filed it within thirty (30) days of service of the summons and complaint.

25       10.    As required by 28 U.S.C. § 1446(d), Wells Fargo will provide written notice of the

26   removal of the State Court Action to the Plaintiff, and to the Superior Court of California, County

27   of Santa Clara.

28

- 2 -

1
2
3          WHEREFORE, Wells Fargo petitions that the pending State Court Action be removed to
4    this Court for final determination.
5
6    DATED: August ___, 2008                    SEVERSON & WERSON
7                                               A Professional Corporation
8
9                                               By: _____
                                                        Peter H. Bales
10
11                                             Attorneys for Defendant
                                               WELLS FARGO AUTO FINANCE, INC.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 3 -

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

ENDORSED FILED

08 JUL 11 PM 1:49
Duarte

David H. Yamasaki, Clerk of the Superior Court
County of Santa Clara, California

By_____
Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO)* :
WELLS FARGO AUTO FINANCE, INC.; and
DOES 1 through 100, Inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE)* :
Santiago Sanchez, an individual

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DIAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California / County of Santa Clara
Unlimited Jurisdiction
191 North First Street            San Jose, CA 95113

**CASE NUMBER:**
*(Número del Caso):*
108CV117118

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Parviz Darabi, Esq.                      Law Offices of Parviz Darabi
500 Airport Blvd., Suite 100             Burlingame, Ca 94010
Tel: 650- 343-5357 / Fax: 650- 343-5357

DAVID H. YAMASAKI
Chief Executive Officer, Clerk

G. Duarte

DATE:          JUL 11 2008        Clerk, by_____, Deputy
*(Fecha)*                         *(Secretario)*                  *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)* :
3. ☒ on behalf of *(specify)* :  WELLS FARGO AUTO FINANCE, INC
   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)*:
4. ☒ by personal delivery on *(date)* :  July 14-2008

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. January 1, 2004)
Martin Dean's Essential Forms ™

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

Santiago Sanchez

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address):* | | FOR COURT USE ONLY |
|---|---|---|
| Parviz Darabi, Esq.                                  SBN 209021 Law Offices of Parviz Darabi 500 Airport Blvd., Suite 100 Burlingame, Ca 94010 TELEPHONE NO.: (650) 343-5357    FAX NO: (650) 343-5391 ATTORNEY FOR *(Name):* Plaintiff | | ENDORSED FILED 08 JUL 11 PM 1:49 David H. Yamasaki, Chief Executive Officer/Clerk County of Santa Clara, California By: _____ Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara
STREET ADDRESS: 191 North First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME: Unlimited Jurisdiction

CASE NAME: Sanchez vs. Wells Fargo Auto Finance, Inc.

| CIVIL CASE COVER SHEET ☑ Unlimited ☐ Limited (Amount demanded exceeds $25,000) (Amount demanded is $25,000 or less) | Complex Case Designation ☐ Counter ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | CASE NUMBER: 1 0 8 C V 1 1 7 1 1 8 |
|---|---|---|
| | | JUDGE: |
| | | DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☑ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary b. ☐ nonmonetary; declaratory or injunctive relief c. ☐ punitive
4. Number of causes of action *(specify):* Nine
5. This case ☑ is ☐ is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: July 10, 2008

Parviz Darabi, Esq.
(TYPE OR PRINT NAME)                ►        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Santiago Sanchez

CM-010

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2 30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)-Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice-
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
      or wrongful eviction)*
  Contract/Warranty Breach-Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case-Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ-Administrative Mandamus
  Writ-Mandamus on Limited Court
    Case Matter
  Writ-Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal-Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400-3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late
    Claim
  Other Civil Petition

**ESSENTIAL FORMS™**  **CIVIL CASE COVER SHEET**

Santiago Sanchez

1  PARVIZ DARABI, SBN 209021
   WILLIAM BLASSER, SBN 232291
2  **LAW OFFICES OF PARVIZ DARABI**
3  500 Airport Blvd., Suite 100
   Burlingame, CA 94010
4  Telephone:  (650) 343-5357
   Facsimile:   (650) 343-5391
5
6  Attorney for Plaintiff
7
8              SUPERIOR COURT OF THE STATE OF CALIFORNIA
                 IN AND FOR THE COUNTY OF SANTA CLARA
9                     UNLIMITED JURISDICTION

10                                         **1 0 8 C V 1 1 7 1 1 8**

11 SANTIAGO SÁNCHEZ, an individual    )    CASE NO:
                                      )
12        Plaintiff                   )    COMPLAINT FOR DAMAGES:
                                      )
13        v.                          )    1.  Fraud;
                                      )    2.  Negligent Misrepresentation;
14                                    )    3.  Violation of The Consumers Legal
15                                    )        Remedies Act;
   WELLS FARGO AUTO FINANCE, INC.;    )    4.  Rescission (fraud);
16 and DOES 1 through 100, inclusive, )    5.  Rescission (mutual mistake);
                                      )    6.  Violation of Civil Code §1632;
17                                    )    7.  Violation of The Automobile Sales
18        Defendants.                 )        Finance Act;
                                      )    8.  Violation of the Truth in Lending Act &
19                                    )        Regulation Z; and
                                      )    9.  Declaratory Relief
20                                    )
21                                    )
                                      )    **PLAINTIFF DEMANDS JURY TRIAL**
22                                    )

23
24 COMES NOW Plaintiff SANTIAGO SÁNCHEZ, and hereby alleges as follows:

25                            **INTRODUCTION**

26 1.  BOB LEWIS VOLKSWAGEN maintains an unlawful and deceptive practice of: failing
27     to provide Spanish translations of contracts to consumers in accordance with *Civil Code*
28     § 1632; charging consumers for Gap Contracts and Service Contracts without their

---

Complaint for Damages                    -1-

knowledge or consent; backdating vehicle purchase agreements; failing to disclose that vehicles sold to consumers were previously registered as rental vehicles.

2. WELLS FARGO AUTO FINANCE, INC. maintains an unlawful and deceptive practice of back-dating vehicle purchase agreements.

3. This lawsuit is brought pursuant to California's Consumer Legal Remedies Act to remedy this fraudulent, unfair and unlawful conduct and seeks permanent injunctive relief to end the described conduct and also seeks to provide restitution to consumers affected by Defendants' unlawful, deceptive, and unfair conduct.

## JURISDICTION AND VENUE

4. Plaintiff SANTIAGO SÁNCHEZ (hereinafter "Plaintiff") currently resides in Santa Clara County, State of California.

5. The purchase agreement contract between Plaintiff and Defendant underlying this action was a purchase contract (the Motor Vehicle Contract or "MVC") within the meaning of Civil Code § 2981.9. Plaintiff's signed affidavit is attached hereto as **"Exhibit 1."**

6. BOB LEWIS VOLKSWAGEN (hereinafter "DEALER") is, and at all times relevant herein was a California Corporation licensed to transact business in the State of California, and is engaged in the sale, resale, and repair of automobiles. DEALER maintains its principal place of business in the City of San José, in the County of Santa Clara, State of California, thus venue is proper in Santa Clara County.

7. WELLS FARGO AUTO FINANCE, INC. (hereinafter "LENDER") is a financial institution engaged, in part, in the business of making consumer automobile loans, and is doing business in California. LENDER accepted assignment of the MVC for the purchase of the subject vehicle by Plaintiff. All claims and defenses, which Plaintiff can maintain against DEALER can also be maintained against Defendant LENDER pursuant to Civil Code §2983.5(a) and the terms and provisions of the MVC which states as follows:

> "ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES...."

8. Plaintiff does not know the true names and capacities, whether corporate, partnership, associate, individual or otherwise, of Defendants sued herein as Does 1 through 100,

inclusive, and therefore names said Defendants under the provisions of § 474 of the California Code of Civil Procedure.

9. Plaintiff is informed and believe, and on that basis allege that Defendants Does 1 through 100 are in some manner responsible for acts, occurrences and transactions set forth herein and are legally liable to Plaintiff and the Plaintiff class.

10. Plaintiff is informed and believes, and on that basis allege, that at all times mentioned herein each Defendant, whether actually or fictitiously named was the principal, agent or employee of each of the other Defendant, and in acting as such principal, agent or employee within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth, by reason of which each Defendant is liable to Plaintiffs for the relief prayed for herein.

11. At all times relevant herein Defendants ratified the unlawful conduct of the other Defendants, who were acting within the scope of their agency or employment, by accepting the benefits of the transaction with knowledge of the wrongdoing, or otherwise by failure to repudiate the misconduct.

## PRE-LITIGATION CLAIM FILINGS

12. On February 25, 2008, Plaintiff sent to DEALER and LENDER a written Notice of Violation of Consumer Legal Remedies Act, by certified mail. These notices and demand notified these Defendants of their violations of the Civil Code that resulted in the sale of goods to Plaintiff's and demanded that Defendants remedy such violations promptly. A copy of Plaintiff's letters are attached hereto as **EXHIBIT "2"** and incorporated by this reference as though set forth in full.

## GENERAL ALLEGATIONS

13. On or about November 11, 2007, Plaintiff went to DEALER'S main business location at 911 Capital Expressway Auto Mall, San José, California 95136.

14. Upon arrival at the dealership, Plaintiff was approached by an individual who identified himself as Daniel Zamora (hereinafter "Zamora"), a duly authorized agent of DEALER in all respects, as authorized to make representations on behalf of DEALER, and to enter into a motor vehicle purchase agreement on behalf of DEALER.

15. Mr. Zamora spoke to Plaintiff in his native tongue, Spanish. Indeed, negotiations for the purchase of the subject vehicle were conducted primarily in the Spanish language.

16. Plaintiff informed Zamora he was looking for a vehicle to provide him with safe and reliable transportation. Zamora directed Plaintiff to a 2006 Dodge Durango, VIN: 1D4HD48N66F178499. Plaintiff then informed DEALER that he would be interested in purchasing the subject vehicle if the dealership would take his 2003 Chrysler Voyager in on trade. Plaintiff made it clear he would not purchase the 2006 Durango unless DEALER paid off his existing loan on the trade in. After DEALER assured Plaintiff it would pay off his trade in vehicle, Plaintiff agreed to purchase the 2006 Durango.

17. DEALER procured the interest of Plaintiff in the purchase of a 2006 Dodge Durango, VIN: 1D4HD48N66F178499 (hereinafter referred to as the "Vehicle") offered for sale by DEALER.

18. On or about 11/11/07, Plaintiff entered into a retail sales agreement (hereinafter referred to as the "CONTRACT # 1"). The dealership did not initially provide Plaintiff with a Spanish version of Contract #1, and he was unable to understand it. In response to this, the dealership told Plaintiffs (in Spanish) that CONTRACT # 1 was nothing more than a "standard contract" required to purchase the subject vehicle. The APR for Contract #1 was 23.50% with a $593.62 monthly payment. The Vehicle was purchased primarily for personal, family, and household purposes, as indicated on CONTRACT # 1.

19. Aside from the Contract #1, Plaintiff was bombarded with a glut of additional documents, most of which he was unable to read. One such document is the "GAP Addendum" form. This document contains several important terms and conditions which are conspicuously absent from Contract #1 (e.g., benefits, termination rights, coverage limitations, etc.). The dealership did not provide Plaintiff with a copy of this document in Spanish.

20. Yet another document Plaintiff was told to sign is an "Agreement to Furnish Insurance Policy." This document contains terms and conditions of the transaction which are not listed on Contract #1. Specifically, it creates an obligation that Plaintiffs purchase

1 insurance for the subject vehicle and then sets forth penalties for their failure to do so.

2 The dealership did not provide Plaintiff with a copy of this document in Spanish.

21. Plaintiff was told to sign a "Get Ready Instructions" form. This document contains terms and conditions of the transaction which are not listed on Contract #1 (e.g., the subject vehicle is sold "as is"). In fact, this form contradicts the Buyer's Guide, which states the subject vehicle was accompanied by a warranty. The dealership did not provide Plaintiff with a copy of this document in Spanish.

22. Plaintiff was told to sign a "Vehicle History Disclosure" form. This document contains terms and conditions of the transaction which are not listed on Contract #1. Specifically, it discloses the subject vehicle's prior history as a rental vehicle. The dealership did not provide Plaintiff with a copy of this document in Spanish.

23. Plaintiff was told to sign a "Pre-Contract Disclosure Statement" form. This document lists a GAP contract charged to Plaintiff for $800.00. Most importantly, this document discloses what Plaintiff's monthly payment would be without the GAP contract and that the products listed are optional. The dealership did not provide Plaintiff with a copy of this document in Spanish. In fact, Plaintiff was not told he was being charged for a GAP contract.

24. On or around November 26, 2007, Plaintiff received a phone call from DEALER. According to the dealership, he *had* to sign a new contract to complete his purchase of the subject vehicle. Based upon this representation, Plaintiff returned to the dealership.

25. Upon returning, DEALER presented Plaintiff with a second retail installment sales contract (hereinafter referred to as the "RISC"). The RISC disclosed an APR of 19.65%; a finance charge of $17,953.17; and a total sales price of $42,763.68. Plaintiff's monthly payment only changed by $0.32 because DEALER packed it with a $2,000.00 service contract. Even though the RISC was signed 11/26/07, DEALER back-dated it to 11/11/07.

26. Plaintiff was instructed to sign the RISC before being given a copy of it in Spanish. In addition to the RISC, Plaintiff was told to sign other documents. One such document

1   was an "Acknowledgment of Re-Written Contract" form. This form contains terms and

2   conditions of the transaction which are not listed on the RISC (e.g., Plaintiff did not have

3   to sign the RISC; Plaintiff was entitled to rescind Contract #1, etc.). In fact, this form

4   contradicts DEALER'S statement that Plaintiff had to sign the RISC in order to keep the

5   subject vehicle. Not surprisingly, DEALER did not provide Plaintiff with a copy of this

6   document in Spanish.

7   27. Another document is the "Vehicle Service Contract Agreement," commonly referred to

8   (and itemized on the RISC) as a service contract. This agreement contains several

9   important terms which are not disclosed on the RISC (e.g., the deductible, coverage

10  limits, benefits, rescission rights, etc.). DEALER did not provide Plaintiff with a copy of

11  this document in Spanish. In fact, Plaintiff was not told he was being charged for this

12  product.

13  28. Finally, Plaintiff was told to sign another "Pre-Contract Disclosure Statement" form.

14  This document lists a GAP contract ($800.00) and Service contract ($2,000.00) being

15  charged to Plaintiff. This document discloses what Plaintiff's monthly payment would

16  be without the extra products and states they are *optional*. DEALER did not provide

17  Plaintiff with a copy of this document in Spanish. In fact, Plaintiff was not told he was

18  being charged for either product.

19  29. After being presented with all of the English documents, DEALER presented Plaintiff

20  with a Spanish RISC and told him it was a document that confirmed everything else he

21  had already signed. DEALER also told Plaintiff to sign a "Translated Contract

22  Acknowledgment."

23  30. In the end, DEALER did not pay off Plaintiff's trade in vehicle as promised. Instead, it

24  rolled his negative equity into the price of the subject vehicle.

25  31. At no time did DEALER ever inform Plaintiff he was free to walk away from the

26  transaction if DEALER was unable to honor the terms of CONTRACT #1.

27  32. Despite the fact that the MVC was consummated 11/26/07, DEALER backdated the

28  RISC to read 11/11/07 thereby violating the Automobile Sales Finance Act, Truth in

Lending Act, Regulation Z, and the Consumer Legal Remedies Act contained in Civil

Code §1750 et sec., and specifically Civil Code §1770(a)(14)(16)(19).  LENDER knew the RISC was backdated prior to accepting it from DEALER. Plaintiff alleges it is DEALER and LENDER's standard business practice to backdate all rewritten contracts in violation of State and Federal law.

33. As a proximate result of the unlawful conduct of Defendants as hereinbefore described, Plaintiff purchased the Vehicle to Plaintiffs' detriment and have incurred damages accordingly.

34. Plaintiff is informed and believes and thereupon alleges that Defendants' conduct in Plaintiff's situation was not an isolated or random incident.

### FIRST CAUSE OF ACTION
(Fraud)
(Against LENDER and all applicable DOES)

35. Plaintiff re-alleges and incorporates herein by this reference the allegations in each and every paragraph above, as though fully set forth herein.

36. On or about 11/11/07, and subsequently on 11/26/07 DEALER made the following misrepresentations to Plaintiff: 1) that by signing CONTRACT #1 and the RISC, Plaintiff would only be purchasing the Vehicle; 2) that DEALER would pay off the loan on the vehicle that Plaintiff was trading in towards the purchase of the Vehicle; 3) that Plaintiff had to sign the RISC; and 4) the Vehicle was in good condition and could provide safe and reliable transportation.

37. DEALER knew the representations were false.  DEALER made these representations with the intent to induce Plaintiff to rely thereon and to purchase the Vehicle.

38. Prior to selling the Vehicle to Plaintiff, DEALER intentionally failed to disclose material facts to Plaintiff.  Specifically, DEALER failed to disclose: 1) that the Vehicle had pre-existing damage; 2) that the Vehicle was previously registered as a rental vehicle; 3) that by signing CONTRACT #1 and the RISC, Plaintiff was being charged for a GAP Contract and Service Contract; 4) that Plaintiff did not have to sign the RISC and was free to walk away from the transaction and receive all of the consideration he paid back unless DEALER was willing to honor the contractual terms which had been set forth in CONTRACT #1; and 5) that they would not pay off the vehicle traded-in in a timely manner.

56. DEALER had a duty to disclose the concealed facts because: 1) the undisclosed fact was known only to DEALER and was not discoverable by Plaintiff; 2) DEALER actively concealed the disclosed facts; and 3) the failure to disclose the facts made other representations made by DEALER misleading. Additionally, DEALER had a statutory duty to disclose pursuant to 13 *Cal. Code of Regulations* § 260.02 (b), which states that former rental vehicles "shall be clearly identified as such if the previous status is known to the seller."

39. DEALER concealed these facts with the intent to deceive and induce Plaintiff to enter into a purchase contract for the Vehicle.

40. Plaintiff was unaware of the undisclosed facts and reasonably relied on DEALER's deception. Plaintiff would have never purchased the Vehicle from DEALER had he known the undisclosed facts.

41. At the time these representations and non-disclosures, as alleged hereinabove, were made (or, with respect to the disclosures, were not made), Plaintiff was ignorant of their falsity but believed them to be true. In reliance thereupon, Plaintiff was induced to agree to purchase the Vehicle, which he would not have done had he known the true facts.

42. By reason of the facts alleged, Plaintiff has been damaged in a sum to be proven at trial.

43. The representations, concealments, and nondisclosures made by DEALER as herein alleged were willful, deliberate, malicious, and intended to oppress and defraud Plaintiff so that DEALER is subject to exemplary and punitive damages. DEALER knew in advance that its employees were likely to commit the aforementioned misrepresentations and non-disclosures, and employed them with *conscious disregard* of the rights or safety of others. In fact, Plaintiff alleges DEALER's employees were managing agents of DEALER, and were all acting pursuant to DEALER's instructions.

WHREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION
### (Negligent Misrepresentation)
### (Against LENDER and all applicable DOES)

44. Plaintiff re-alleges and incorporates herein by this reference the allegations in each and every paragraph above, as though fully set forth herein.

45. As set forth above, DEALER made several misrepresentations and fraudulent non-disclosures. In making the representations and omissions as hereinbefore alleged, and in

1  doing the things alleged above, DEALER acted without any reasonable grounds for

2  believing the representations were true, and intended by said representations to induce

3  the reliance of Plaintiff.

46. Plaintiff relied upon these false representations, promises, concealments, and

nondisclosures by DEALER, and each of them, in purchasing services and goods from

DEALER and entering into agreements with DEALER, and each of them, which reliance

was reasonably justified. As a result, Plaintiff sustained damages.

47. As a result of DEALER'S and each of its agents' wrongful conduct, Plaintiff has

suffered and continues to suffer economic losses and other general and specific damages

in an amount to be determined at trial.

WHREFORE, Plaintiff prays for judgment as hereinafter set forth.

### THIRD CAUSE OF ACTION
(Violation of the Consumers Legal Remedies Act, Civil Code §§ 1750 *et seq.*)
(Against LENDER and all applicable DOES)

48. Plaintiff re-alleges and incorporates herein by this reference the allegations in each and

every paragraph above, as though fully set forth herein.

49. At all relevant times, Plaintiff was a consumer, as that term is defined in Civil Code

§1761(d). The transactions from which this action arises are transactions involving the

sale of goods or services to consumers, and thus are covered by the Consumers Legal

Remedies Act ("CLRA").

50. The purpose of the Consumers Legal Remedies Act is to protect against unfair and

deceptive business practices and to provide efficient and economical procedures to

secure such protection. The act is to be liberally construed and applied to promote its

purposes.

a. DEALER failed to provide a Plaintiff with a Spanish translation of his agreement

to purchase the Vehicle in accordance with *Civil Code* § 1632. This conduct

violates California public policy and as such violates the CLRA contained in Civil

Code §1750 et sec., and specifically Civil Codes §1770(a)(5)(9)(14)(16)(19)

which states: "The following unfair methods of competition and unfair or

deceptive acts of practices undertaken by any person in a transaction intended to

result or which results in the sale or lease of goods or services to any consumer

are unlawful:... (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have... (9) Advertising goods with intent not to sell them as advertised...(14) representing that a transaction confers rights or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law... (16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not... and (19) inserting an unconscionable provision in the contract."

b.  Prior to selling the Vehicle to Plaintiff, DEALER intentionally failed to disclose material facts to Plaintiff.  Specifically, DEALER failed to disclose: 1) that the Vehicle had pre-existing damage; 2) that the Vehicle was previously registered as a rental vehicle; 3) that by signing CONTRACT #1 and the RISC, Plaintiff was being charged for a GAP Contract and Service Contract; and 4) that Plaintiff did not have to sign the RISC and was free to walk away from the transaction and receive all of the consideration he paid back unless DEALER was willing to honor the contractual terms which had been set forth in CONTRACT #1. This constitutes a violation of the CLRA contained in Civil Code §1750 et sec., and specifically Civil Code §1770(a)(1)(2)(5)(7)(9)(14)(16)(19) which states: "The following unfair methods of competition and unfair or deceptive acts of practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: 1) Passing off goods or services as those of another... (2) Misrepresenting the source, sponsorship, approval, or certification of goods or services... (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have... (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another... (9) Advertising goods with intent not to sell them as advertised... (16) Representing that the subject of a transaction has been supplied in accordance

with a previous representation when it has not... (14) representing that a transaction confers rights or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law... and (19) inserting an unconscionable provision in the contract."

c.   DEALER's misrepresentations as set forth above constitute a violation of the CLRA contained in Civil Code §1750 et sec., and specifically Civil Code §1770(a)(1)(2)(5)(7)(9)(14)(16)(19) which states: "The following unfair methods of competition and unfair or deceptive acts of practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: (1) Passing off goods or services as those of another... (2) Misrepresenting the source, sponsorship, approval, or certification of goods or services... (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have... (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another... (9) Advertising goods with intent not to sell them as advertised... (14) representing that a transaction confers rights or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law... (16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not...and (19) inserting an unconscionable provision in the contract."

d.   DEALER and LENDER backdated the RISC to a date preceding its actual consummation. This violates the Automobile Sales Finance Act, Truth in Lending Act, Regulation Z, and the Consumer Legal Remedies Act contained in Civil Code §1750 et sec., and specifically Civil Code §1770(a)(5)(14)(16)(19) which states: "The following unfair methods of competition and unfair or deceptive acts of practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:... (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do

1    not have or that a person has a sponsorship, approval, status, affiliation, or

2    connection which he or she does not have... (14) representing that a transaction

3    confers rights or involves rights, remedies, or obligations which it does not have

4    or involve, or which are prohibited by law... (16) Representing that the subject of

5    a transaction has been supplied in accordance with a previous representation when

     it has not... and (19) inserting an unconscionable provision in the contract."

6
     e.   DEALER charged Plaintiff for a Gap Contract and a Service Contract without his

7         knowledge or consent.  Such charges are in violation of the Consumer Legal

8         Remedies Act contained in Civil Code §1750 et sec., and specifically Civil Code

9         §1770 (a)(5)(9)(14)(16)(19) which states: "The following unfair methods of

10        competition and unfair or deceptive acts of practices undertaken by any person in

11        a transaction intended to result or which results in the sale or lease of goods or

12        services to any consumer are unlawful:... (5) Representing that goods or services

13        have sponsorship, approval, characteristics, ingredients, uses, benefits, or

14        quantities which they do not have or that a person has a sponsorship, approval,

15        status, affiliation, or connection which he or she does not have...(9) Advertising

          goods with intent not to sell them as advertised... (14) Representing that a

16        transaction confers rights or involves rights, remedies, or obligations which it

17        does not have or involve, or which are prohibited by law... (16) Representing that

18        the subject of a transaction has been supplied in accordance with a previous

19        representation when it has not and (19) inserting an unconscionable provision in

20        the contract."

21   51. As a proximate result of the misleading conduct and proscribed practices of the

22       DEALER and LENDER, Plaintiff has suffered actual damages in an amount that exceeds

23       the jurisdictional minimum of the Superior Court.  In addition, Plaintiff is entitled to

24       rescind the RISC and to obtain restitution of all monies paid pursuant to the RISC.

25       Plaintiff is also entitled to recover a statutory penalty under the Truth in Lending Act.

26   52. Plaintiff is informed and believe and on that basis allege, that the conduct of the

         DEALER was willful, intentional, and a pattern of practice against Plaintiff and

27       numerous similarly situated consumers.  Plaintiff is informed and believes that LENDER

28       accepted the assignment of the RISC from DEALER knowing full well that it was back-

dated in violation of State and Federal law. For these reasons, Plaintiff requests exemplary damages and all other penalties allowed by statute.

53. Plaintiff is informed and believes and thereupon alleges that Defendants' conduct was not an isolated or random incident. Plaintiff further alleges that DEALER and LENDER routinely enter into back-dated contracts which are unlawful and unconscionable and that this is a part of their standard business practice. Pursuant to Civil Code § 1780(a)(2), any consumer who has suffered damages as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Civil Code § 1770 may bring an action against the individual or entity who violated § 1770 to obtain an order enjoining the methods, acts, or practices which are in violation of § 1770. Plaintiff seeks such an order from the Court to enjoin the DEALER and LENDER's aforementioned practices which violate § 1770.

54. Plaintiff is entitled to an award of attorneys' fees and costs pursuant to Civil Code §1780(d).

55. Plaintiff has satisfied all terms of the contract, statutory notices and requirements, except as may have been excused by misconduct of the Defendants. This complaint shall serve as further notice of the statutory violations described herein. The Defendants have failed and refused to make restitution or offer Plaintiff adequate relief or remedies which they have demanded and which they are otherwise entitled by law.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## FOURTH CAUSE OF ACTION
RESCISSION (BASED ON FRAUD)

(Against LENDER and all applicable DOES)

56. Plaintiff re-alleges and incorporates herein by this reference the allegations in each and every paragraph above, as though fully set forth herein.

57. Based upon the misrepresentations and non-disclosures set forth above, Plaintiff is entitled to rescind the MVC.

58. Plaintiff will suffer substantial harm and injury under the contract if it were not rescinded in that as a result of Defendant's conduct, Plaintiff will be deprived of their bargain and would have an automobile substantially different from and inferior to the one they bargained and paid for and intended to purchase.

59. Plaintiff intends service of the summons and complaint in this action to serve as notice of rescission of the contract, and hereby offer to restore all consideration furnished by defendant under the contract, on condition that defendant restore to them the consideration furnished by Plaintiff.

WHEREFORE, Plaintiff prays for judgment against defendants, and each of them, as set forth below.

### FIFTH CAUSE OF ACTION

RESCISSION (BASED ON MUTUAL MISTAKE)

(Against LENDER and all applicable DOES)

60. Plaintiff re-alleges and incorporates herein by this reference the allegations in each and every paragraph above, as though fully set forth herein.

61. After purchasing the Vehicle, Plaintiff learned that the subject vehicle was not in good condition and had previously been used as a rental car, a fact which DEALER did not disclose to Plaintiff at the time of sale. Plaintiff alleges DEALER intentionally concealed these facts from him. At the very minimum, both sides were under the mistaken impression that the Vehicle had never been previously registered as a rental vehicle.

62. Plaintiff will suffer substantial harm and injury under the contract if it is not rescinded in that he will be deprived of his bargain and would have an automobile substantially different from and inferior to the one he bargained and paid for and intended to purchase.

63. Plaintiff intends service of the summons and complaint in this action to serve as notice of rescission of the contract, and hereby offer to restore all consideration furnished by defendant under the contract, on condition that defendant restore to them the consideration furnished by Plaintiff.

WHEREFORE, Plaintiff prays for judgment against defendants, and each of them, as set forth below.

### SIXTH CAUSE OF ACTION

(Violation of California Civil Code § 1632)
(Against LENDER and all applicable DOES)

64. Plaintiff re-alleges and incorporates herein by this reference the allegations in each and every paragraph above, as though fully set forth herein.

65. California Civil Code § 1632 requires that any person engaged in a trade or business, namely the Defendants herein, who negotiate primarily in Spanish, in the course of entering into a contract subject to the provisions of Civil Code § 1801 *et seq.*, or 2981, *et seq.*, must provide and deliver to the other party to the contract and prior to the execution thereof, translation of the contract in the language in which the contract was negotiated, which includes a translation of every term and condition in that contract.

66. DEALER failed to provide Plaintiff with a Spanish translation of his agreement with DEALER in accordance with Civil Code § 1632.

67. Plaintiff is entitled to rescind the MVC pursuant to Civil Code § 1632(k).

68. Plaintiff is informed and believes, and on that basis alleges, that at the time the RISC was entered into, DEALER failed to conspicuously display in Spanish a notice to the effect that the DEALER is, and at the time was, required to provide a translation in the language in which the sale contract, RISC was negotiated, or a corresponding translation of the disclosures required by law. The DEALER knew or had reason to know that its employees were negotiating agreements in the Spanish language; and failed to provide the required notice on the premises in a conspicuous manner, in violation of Civil Code § 1632(f).

69. As a result, Plaintiff may, and hereby does, seek rescission of the RISC pursuant to Civil Code § 1632(k). Plaintiff is further entitled to restitution and damages in the maximum amount allowed by law.

70. Plaintiff is informed and believes and thereupon alleges that Defendants' conduct was not an isolated or random incident. Plaintiff further alleges that DEALER routinely fails to provide Spanish language documents in compliance with *Civil Code* § 1632. As such, Plaintiff is entitled to injunctive relief to prevent DEALER from engaging in this conduct.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## SEVENTH CAUSE OF ACTION
(Violation of Automobile Sales Finance Act))
(Against LENDER and all applicable DOES)

71. Plaintiff re-alleges and incorporates herein by this reference the allegations in each and every paragraph above, as though fully set forth herein.

72. On or about 11/11/07, Plaintiff entered into a contract for the purchase of the Vehicle (i.e., CONTRACT # 1). This transaction was governed by the Automobile Sales Finance Act (hereinafter referred to as the "ASFA") as codified in California Civil Code §§2981-2984.6.

73. Subsequently, on 11/26/07, Plaintiff was instructed to sign the RISC. The RISC bears a date which precedes its consummation date (i.e., 11/11/07).

74. Pursuant to Civil Code §2982, DEALER and LENDER are required to make all disclosures that are required under Regulation Z (Truth In Lending Act). As is set forth below, DEALER and LENDER violated this section by failing to comply with the Truth in Lending Act and Regulation Z.

75. DEALER also violated the ASFA (Civil Code § 2981.9) by failing to disclose the accurate finance charge being paid by Plaintiff.

76. Pursuant to *Civil Code* § 2983, Plaintiff is entitled to rescind the RISC and recover his attorneys fees and costs.

77. Plaintiff is informed and believes and thereupon alleges that Defendants' conduct was not an isolated or random incident. Plaintiff further alleges that DEALER and LENDER routinely enter into back-dated contracts which are unlawful and unconscionable and that this is a part of their standard business practice. As such, Plaintiff is entitled to injunctive relief to prevent DEALER and LENDER from engaging in this conduct.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

### EIGHTH CAUSE OF ACTION

(Violation of the Truth in Lending Act, Regulation Z)
(Against LENDER and all applicable DOES)

78. Plaintiff re-alleges and incorporates herein by this reference the allegations in each and every paragraph above, as though fully set forth herein.

79. On 11/11/07, DEALER had Plaintiff sign CONTRACT # 1. On 11/26/07, DEALER told Plaintiff he had to sign the RISC. The RISC constitutes a loan to Plaintiff for a good which is used primarily for personal, family or household purposes.

80. The RISC was consummated, as that term is defined by 12 C.F.R. § 226.2(a)(13), approximately 14 days after CONTRACT # 1 was signed on 11/26/07. Notwithstanding this, the RISC is back-dated to reflect a date of 11/11/07. LENDER knew the RISC was back-dated when it accepted its assignment from DEALER.

81. In this loan transaction, DEALER and LENDER violated the Federal Truth in Lending
Act, 15 *U.S.C.* §§ 1601 et seq., and the Federal Reserve Board's Regulation Z, 12 *C.F.R.*
Pt. 226 et seq., in the following ways:

    a. The Truth in Lending Act, i.e., 15 U.S.C. § 1606(c), requires the disclosed APR to
be accurate to within one-eighth of one per cent of the properly calculated actual
APR.

    b. The MVC's APR must be calculated according to Regulation Z instructions as set
forth in 12 *C.F.R.* § 226.22 & 12 *C.F.R.* Pt. 226, App. J.

    c. According to 12 *C.F.R.* Pt. 226, App. J, in calculation the APR, the term of a
transaction begins on the date of its consummation. Regulation Z does not permit
calculation of the APR based on an interest accrual date which is earlier than the
consummation date.

    d. Plaintiff's APR on the RISC should have been calculated based on a term starting
on 11/26/07, the RISC's consummation date, not 11/11/07.

    e. Using the improper accrual date of 11/11/07, the RISC's disclosed APR of
19.65% and disclosed finance charge is inaccurate and outside the one-eighth of
one percent (i.e., .125%) tolerance permitted by the Truth in Lending Act, 15
*U.S.C.* § 1606(c).

    f. An earlier accrual date lengthens the term of the loan. If the monthly payment
schedule and amounts are held constant (as they were in this case), the result of
the longer term will be to lower the effective APR because the credit is being
extended over a longer period of time for the same payments. A later accrual date
would have the opposite effect, shortening the time of the loan while keeping the
payments the same, resulting in a higher APR. Hence, by intentionally using an
earlier accrual date on the MVC, DEALER and LENDER made the disclosed
APR look lower than it actually was. DEALER and LENDER also inaccurately
disclosed the finance charge.

82. As a result of the above-described violations of the Federal Truth in Lending Act
DEALER and LENDER are liable to Plaintiff and the putative class for general damages
to be determined at trial, statutory damages of $1,000.00 pursuant to 15 *U.S.C.* §

1    1640(a)(2)(A), and their costs and reasonable attorney fees, as provided for in 15 *U.S.C.*

2    § 1640(a).

3    83. Plaintiffs are informed and believe and thereupon allege that Defendants' conduct was

4    not an isolated or random incident. Plaintiff further alleges that DEALER and LENDER

5    routinely enter into back-dated contracts which are unlawful and unconscionable and that

6    this is a part of their standard business practice.

### NINTH CAUSE OF ACTION
(Request for Declaratory Relief (C.C.P. § 1060))
(Against DEALER, LENDER and all applicable DOES)

7

8    84. Plaintiff re-alleges and incorporates herein by this reference the allegations in each and

9    every paragraph above, as though fully set forth herein.

10   85. DEALER arranged for and assigned its rights under the RISC to LENDER.

11   86. Plaintiff is making regular monthly payments for the purchase of the Vehicle.

12   87. The RISC is subject to the terms of the Automobile Sales Finance Act, Civil Code §

13   2981 et seq. Thus, pursuant to Civil Code § 2983.5(a), Plaintiff is entitled to bring all

14   claims, equities and defenses Plaintiff has against the DEALER, against LENDER.

15   Additionally, the contract states that "ANY HOLDER OF THIS CONSUMER CREDIT

16   CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE

17   DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES

18   OBTAINED PURSUANT HERETO..."

19   88. Pursuant to Civil Code § 2983.5(a), the FTC Holder Rule, and the terms of the MVC,

20   Plaintiff seeks a declaration that the RISC, assigned to LENDER, is rescinded, and that

21   the remaining debt under the RISC is cancelled, and that Plaintiff is entitled to a return of

22   all payments made pursuant to the RISC based upon the allegations of unlawful conduct

     committed by DEALER and Does 1-100 as set forth in this complaint.

23   WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

24   ### PRAYER FOR RELIEF

25   WHEREFORE, Plaintiff prays for judgment as follows:

26       a.  For actual damages according to proof at trial;

27       b.  For punitive and exemplary damages;

28       c.  For determination by the court that the Motor Vehicle Contract has been
             rescinded and ordering payment of restitution with interest;

d. For civil penalty pursuant to California Civil Code §1780;

e. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;

f. For attorney's fees and costs of suit incurred herein;

g. For prejudgment interest at the maximum legal rate and

h. For such other and further relief as the court deems appropriate under the circumstances.

i. For injunctive relief prohibiting LENDER.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial of this matter by jury.

Dated: ___7/10___, 2008
LAW OFFICE OF PARVIZ DARABI

Parviz Darabi, Esq.
Attorney for Plaintiff

# Exhibit "1"

## AFFIDAVIT
## DECLARACIÓN JURADA

I, Santiago Sánchez, am the Plaintiff in the Proceeding and hereby attest that the following is true to the best of my knowledge. I purchased a Used 2006 Dodge Durango, VEHICLE IDENTIFICATION NUMBER: 1D4HD48N66F178499, from Bob Lewis Volkswagen, on November 11, 2007. I currently reside in the County of Santa Clara in the State of California.

I declare under the penalty of perjury under the laws of the State of California that the above statement is true and correct to my knowledge.


Yo, Santiago Sánchez, soy el demandante del proseguimiento legal y atestiguo que lo siguiente es verdadero. Yo adquirí una Dodge Durango usada del 2006, VIN: 1D4HD48N66F178499, de Bob Lewis Volkswagen, el 11 de noviembre del 2007. Actualmente vivo en el condado de Santa Clara en el estado de California.

Yo declaro bajo pena y perjurio bajo las leyes del estado de California que la afirmación expuesta previamente es cierta y verdadera.


Executed on _____ 2008

Ejecutado el _6_/_06_/_08_____ del 2008


_____
SANTIAGO SÁNCHEZ

# Exhibit "2"

# Law Offices of Parviz Darabi

Parvizdarabilaw@aol.com

San Francisco Airport Office
500 Airport Blvd, Suite 100
Burlingame, California 94010
650-343-5357 – phone
650-343-5391 – fax

Southern California Office
20955 Pathfinder Rd., Suite 100
Diamond Bar, CA 91765
909-843-6464-phone
909-843-6462-fax

February 27, 2008

**Via Certified Mail**
Bob Lewis Volkswagen
911 Capitol Expressway Auto Mall
San Jose, CA 95136

**Via Certified Mail**
Wells Fargo Auto Finance C/O
CSC – Lawyers Incorporating Service
2730 GATEWAY OAKS DR STE 100
Sacramento, CA 95833

|  |  |
|---|---|
| Re: Consumers/Plaintiff: | Santiago Sanchez |
| Vehicle: | 2006 Dodge Durango |
| VIN: | 1D4HD48N66F178499 |

TO WHOM IT MAY CONCERN:

This office represents Santiago Sanchez (hereinafter referred to as "Plaintiff") and all other California consumers similarly situated in an action against Bob Lewis Volkswagen (hereinafter referred to as "the dealership") and Wells Fargo Auto Finance (hereinafter "Wells Fargo"), arising out of the purchase of the aforementioned subject vehicle for the total sales price of $42,763.68. This letter is being sent in accordance with California's Civil Code §1782. This is a statutory demand and offer to compromise. Do not contact Plaintiff directly.

## I.    Background Facts

Plaintiff went to the dealership on November 11, 2007 to browse its sales lot. Upon arrival, he was greeted by one of the dealership's salesmen, Daniel Zamora. Mr. Zamora spoke to Plaintiff in his native tongue, Spanish. Indeed, negotiations for the purchase of the subject vehicle were conducted primarily in the Spanish language.

The dealership directed Plaintiff to the subject vehicle. Plaintiff then informed the dealership that he would be interested in purchasing the subject vehicle if the dealership would take his 2003 Chrysler Voyager in on trade. Plaintiff made it clear he would not purchase the subject vehicle unless the dealership paid off his existing loan

1

on the trade in. After the dealership assured Plaintiff it would pay off his trade in vehicle, Plaintiff agreed to purchase the subject vehicle.

The dealership then presented Plaintiff with a retail installment sales contract written in English (hereinafter "Contract #1"). The dealership did not initially provide Plaintiff with a Spanish version of Contract #1, and he was unable to understand it. In response to this, the dealership told Plaintiffs (in Spanish) that the RISC was nothing more than a "standard contract" required to purchase the subject vehicle. The APR for Contract #1 was 23.50% with a $593.62 monthly payment.

Aside from the Contract #1, Plaintiff was bombarded with a glut of additional documents, all of which were in English only. One such document is the "GAP Addendum" form. This document contains several important terms and conditions which are conspicuously absent from Contract #1 (e.g., benefits, termination rights, coverage limitations, etc.). **The dealership did not provide Plaintiff with a copy of this document in Spanish.**

Yet another document Plaintiff was told to sign is an "Agreement to Furnish Insurance Policy." This document contains terms and conditions of the transaction which are not listed on Contract #1. Specifically, it creates an obligation that Plaintiffs purchase insurance for the subject vehicle and then sets forth penalties for their failure to do so. **The dealership did not provide Plaintiff with a copy of this document in Spanish.**

Plaintiff was told to sign a "Get Ready Instructions" form. This document contains terms and conditions of the transaction which are not listed on Contract #1 (e.g., the subject vehicle is sold "as is"). In fact, this form contradicts the Buyer's Guide, which states the subject vehicle was accompanied by a warranty. **The dealership did not provide Plaintiff with a copy of this document in Spanish.**

Plaintiff was told to sign a "Vehicle History Disclosure" form. This document contains terms and conditions of the transaction which are not listed on Contract #1. Specifically, it discloses the subject vehicle's prior history as a rental vehicle. **The dealership did not provide Plaintiff with a copy of this document in Spanish.**

Finally, Plaintiff was told to sign a "Pre-Contract Disclosure Statement" form. This document lists a GAP contract charged to Plaintiff for $800.00. Most importantly, this document discloses what Plaintiff's monthly payment would be without the GAP contract and that the products listed are *optional*. **The dealership did not provide Plaintiff with a copy of this document in Spanish.** In fact, Plaintiff was not told he was being charged for a GAP contract.

On or around November 26, 2007, Plaintiff received a phone call from the dealership. According to the dealership, he *had* to sign a new contract to complete his purchase of the subject vehicle. Based upon this representation, Plaintiff returned to the dealership.

Upon returning, the dealership presented Plaintiff with a second retail installment sales contract (hereinafter referred to as the "RISC"). The RISC disclosed an APR of 19.65%; a finance charge of $17,953.17; and a total sales price of $42,763.68. Plaintiff's monthly payment only changed by $0.32 because the dealership packed it with a $2,000.00 service contract. Even though the RISC was signed 11/26/07, the dealership back-dated it to 11/11/07.

Plaintiff was instructed to sign the RISC before being given a copy of it in Spanish. In addition to the RISC, Plaintiff was told to sign other documents. One such document was an "Acknowledgment of Re-Written Contract" form. This form contains terms and conditions of the transaction which are not listed on the RISC (e.g., Plaintiff did not have to sign the RISC; Plaintiff was entitled to rescind Contract #1, etc.). In fact, this form contradicts the dealership's statement that Plaintiff had to sign the RISC in order to keep the subject vehicle. Not surprisingly, the dealership did not provide Plaintiff with a copy of this document in Spanish.

Another document is the "Vehicle Service Contract Agreement," commonly referred to (and itemized on the RISC) as a service contract. This agreement contains several important terms which are not disclosed on the RISC (e.g., the deductible, coverage limits, benefits, rescission rights, etc.). The dealership did not provide Plaintiff with a copy of this document in Spanish. In fact, Plaintiff was not told he was being charged for this product.

Finally, Plaintiff was told to sign another "Pre-Contract Disclosure Statement" form. This document lists a GAP contract ($800.00) and Service contract ($2,000.00) being charged to Plaintiff. This document discloses what Plaintiff's monthly payment would be without the extra products and states they are *optional*. The dealership did not provide Plaintiff with a copy of this document in Spanish. In fact, Plaintiff was not told he was being charged for either product.

After being presented with all of the English documents, the dealership presented Plaintiff with a Spanish RISC and told him it was a document that confirmed everything else he had already signed. The dealership also told Plaintiff to sign a "Translated Contract Acknowledgment."

In the end, the dealership did not pay off Plaintiff's trade in vehicle as promised. Instead, it rolled his negative equity into the price of the subject vehicle. Ultimately, Plaintiff was stuck with a GAP and Service Contract he did not want, a transaction he did not understand, and a loan that left him paying more money in interest than the FMV of the subject vehicle itself.

II.    The Dealership's Conduct Violates the Consumer Legal Remedies Act (hereinafter the "CLRA")

3

The dealership's conduct in this case violates the CLRA in several respects. The dealership's conduct specifically violates the following CLRA provision found within California *Civil Code* § 1770(a): "The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful... (1) Passing off goods or services as those of another...(2) Misrepresenting the source, sponsorship, approval, or certification of goods or services...(3) Misrepresenting the affiliation, connection, or association with, or certification by, another...(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have...(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another...(9) Advertising goods with the intent not to sell them as advertised...(13) Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions...(14) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law...(16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not...and (19) Inserting an unconscionable provision into a contract." For clarity, we will address each infraction.

## A.    Failure to Provide a Spanish Translation of Plaintiff's Entire Agreement

When the dealership negotiates a transaction primarily in Spanish, California law requires it to provide a translation of the contract or agreement in the Spanish language. The Spanish translation of the Contract must be presented prior to the English version and it must include "<u>every term and condition in that contract or agreement</u>." See *Civil Code* § 1632 (b). The dealership did not comply with this law because it waited until Plaintiff had executed the English version of Contract #1 and the RISC before presenting them with Spanish copies. Moreover, the Spanish version of those documents do not include every term and condition of the agreement between the dealership and Plaintiff.

The collateral documents listed above (e.g., GAP contract, Service Contract, Get Ready Instructions, Agreement to Furnish Insurance, Acknowledgement of Re-Written Contract, etc.) contain several important provisions that are conspicuously absent from the retail installment sales contract. *Civ. Code* § 1632(k) clearly states that any documents "creating the rights and obligations of the parties" must be provided in Spanish. Here, the aforementioned documents create rights and obligations between the dealership and Plaintiff which are not disclosed on the retail installment sales contract. Those documents also contain terms and conditions of the agreement between the dealership and Plaintiff. As such, the dealership was required to provide Plaintiff with a Spanish copy of these documents.

Pursuant to § 1632(k) Plaintiff is entitled to rescind his contract with the dealership and hereby elect to do so. In addition to the remedy provided by § 1632(k), this violation renders the contract unconscionable because it violates public policy (i.e.,

4

failing to provide Spanish speaking consumers with Spanish translations of the agreements they sign). The dealership also misrepresented the RISC and Contract #1 were enforceable agreements when, in reality, the conduct leading up to those agreement violated California law and rendered it unenforceable.

All in all, this conduct violates the CLRA's provisions found under *Civil Code* §1770(a)(5),(9),(14),(16), & (19).

### B.    The Dealership did not Inform Plaintiff he was Purchasing Anything Other than the Subject Vehicle

Plaintiff did not want to purchase a GAP contract or Service Contract. All of these products were snuck into the RISC without his knowledge, and the dealership took advantage of Plaintiff's language barrier to misrepresent the RISC only obligated him to purchase the subject vehicle. This conduct the dealership has violated the CLRA's provisions found under *Civil Code* §1770(a)(1),(5),(9),(14),(16) & (19).

### C.    Plaintiff was not Required to Sign the RISC

The Dealership told Plaintiff he had to sign the RISC. In reality, Plaintiff was under no obligation to sign RISC and was free to completely walk away from the transaction. By engaging in this conduct, the dealership represented that the first contract created an obligation that in reality did not exist (i.e., that it obligated Plaintiffs to sign the second contract). It also renders the second contract unconscionable. All in all, this conduct violates the CLRA's provisions found under *Civil Code* §1770(a)(2),(14), & (19).

### D.    Back Dating Contracts Violates Federal and State Consumer Protection Laws

The RISC is back-dated to reflect the date of the original contract (i.e., 11/11/07). This practice violates the Federal Truth in Lending Act (15 *U.S.C.* §§ 1601 et seq.), the Federal Reserve Board's Regulation Z (12 *C.F.R.* Pt. 226 et seq.), and the Automobile Sales Finance Act (*Cal. Civ. Code* § 2982(a)).

An earlier accrual date lengthens the term of the loan. If the monthly payment schedule and amounts are held constant (as they were in this case), the result of the longer term will be to lower the effective APR because the credit is being extended over a longer period of time for the same payments. A later accrual date (e.g., November 26, 2007) would have the opposite effect, shortening the time of the loan while keeping the payments the same, resulting in a higher APR. Accordingly, by intentionally using an earlier accrual date on the RISC, the dealership and Wells Fargo made the disclosed APR look lower than it actually was.

For the above stated reasons, the RISC violates public policy and misrepresents the APR being charged to Plaintiff. By engaging in this conduct the dealership and

Wells Fargo has violated the CLRA's provisions found under *Civil Code* §1770(a)(5),(7),(9),(14),(16) & (19).

### E.    Misrepresenting the Subject Vehicle's Prior History Violates the CLRA

The dealership had a statutory duty to disclose the subject vehicle's status as a prior rental car. Specifically, 13 CCR 260.02(b) states: "Former taxicabs, rental vehicles, publicly owned vehicles, insurance salvage vehicles and revived salvage vehicles shall be clearly identified as such if the previous status is known to the seller." Suffice it to say, Plaintiff would not have purchased the subject vehicle had he known of its "previous life" as a rental car.

By making this misrepresentation and failing to disclose the subject vehicle's history, the dealership duped Plaintiffs into believing the subject vehicle was in good condition and could provide reliable transportation. All in all, this conduct violates the CLRA's provisions found under *Civil Code* §1770(a)(1),(2),(5),(7),(9),(14),(16), & (19).

### F.    The dealership did not Pay Off Plaintiff's Trade In Vehicle

The dealership represented that it would pay off Plaintiff's trade in vehicle by his signing the RISC. This was a bald faced lie. The dealership simply rolled Plaintiff's negative equity into this purchase price for the subject vehicle without informing Plaintiff. This conduct violates the CLRA's provisions found under *Civil Code* §1770(a)(1),(2),(5),(7),(9),(14),(16), & (19).

### G.    Wells Fargo is Liable for the Dealership's Violations

Financing for the subject vehicle was arranged by the dealership through Wells Fargo. Wells Fargo accepted assignment of the motor vehicle contract for the purchase of the subject vehicle by Plaintiff in the State of California. All claims and defenses, which Plaintiff can maintain against the dealership can also be maintained against Wells Fargo pursuant to Civil Code §2983 (a), the FTC Holder Rule, and the terms and provisions of the Motor Vehicle Contract which states as follows:

> "Any Holder of this Consumer Credit Contract is Subject to all claims and defenses which the debtor could assert against the seller of goods or services...."

In addition to the rule stated above, Wells Fargo willingly participated in back-dating Plaintiff's RISC.

### III.    Demand for Rectification

On behalf of Plaintiff and the consumers of California, we demand that the dealership and Wells Fargo cease and desist from the above described violations from this date forward. In addition, we demand the dealership contact similarly situated

persons, whose identity is known or, in the exercise of reasonable diligence, can be obtained by the dealership and who in the three (3) years preceding receipt of this letter purchased cars from the dealership and suffered from the same violations as mentioned above. We further demand as follows:

A.    The dealership shall provide the following remedies to consumers who suffered from the misrepresentations mentioned above and have purchased vehicles from the dealership in the past five (3) years:

    1.    The dealership shall send notice to all consumers who negotiated their vehicle purchase primarily in Spanish and did not receive a Spanish copy of their agreement in compliance with *Civil Code* § 1632. The notice will inform each of these consumers they are free to rescind their agreement.

    2.    The dealership will agree to keep pre-printed Spanish translation versions of all GAP insurance products, Service Contracts, Appearance Protection Products, or other back end products sold to its consumers. The dealership will also agree to keep pre-printed Spanish translation versions of its Agreement to Furnish Insurance Policy, Get Ready Instruction form, Pre-Contract Disclosure Statement, Vehicle Prior History Disclosure, and Acknowledgment of Re-Written Contract forms.

    3.    The dealership shall reimburse any and all monies to consumers who have been charged for a product (e.g., GAP Contract, Service Contract, etc.) without the consumers' knowledge.

    4.    The dealership shall rescind any and all purchase agreements to consumers who purchased vehicles that were previous rental vehicles, if the dealership failed to disclose that fact to the consumer at the time of sale.

    5.    The dealership will rescind all agreements with consumers where it promised to pay off that consumer's trade in vehicle and failed to do so.

    6.    The dealership shall rescind any and all purchase agreements entered into with consumers wherein the dealership failed to properly rescind purchase agreements that could not be financed and inform consumers that they were "off the hook" and free to walk away from the transaction.

B.    The dealership and Wells Fargo shall provide the following remedies to consumers who suffered from the misrepresentations mentioned above and have purchased vehicles from the dealership in the past five (3) years:

1. The dealership and Wells Fargo will agree to contact all consumers who have entered into back-dated purchase agreements in violation of Federal and State law and inform them they are entitled to a $1,000.00 statutory fine and are also entitled to rescind these agreements. The dealership and Wells Fargo shall also agree to rescind any and all back – dated purchase agreements entered into with consumers in violation of Federal and State law.

C. The dealership and Wells Fargo shall provide this office with the contact information, including a list of names, current addresses, telephone numbers of all consumers to whom it has sold cars during the past three years and who have suffered from any and all of the statutory violations and misrepresentations mentioned above and are entitled to any of the remedies mentioned above.

D. The dealership and Wells Fargo shall agree to compensate attorney Parviz Darabi, his associates and paralegals, at their regular hourly rate, for the time spent monitoring the dealership in its performance of compliance with notification and restitution to consumers.

E. The dealership and/or Wells Fargo shall provide relief for Plaintiff, individually, as follows:

1. The dealership and/or Wells Fargo shall rescind the purchase agreement for the subject vehicle and reimburse to Plaintiff any and all payments and down payments towards the subject vehicle.

2. The dealership and/or Wells Fargo shall pay damages to Plaintiff in the amount of $20,000.00, in addition to all out-of-pocket damages, any applicable incidental and consequential damages and Plaintiff's attorneys' fees, costs and expenses.

3. The dealership and/or Wells Fargo will pay punitive damages of $378,000.00.

## IV.   Conclusion

Pursuant to the CLRA, the dealership and/or Wells Fargo have thirty (30) days in which to comply with the terms of this letter and make arrangements with this office for relief. We suspect the dealership's conduct in this case is wide-spread, and have reason to believe that it routinely fails to comply with *Civil Code* § 1632 by neglecting to provide consumers with Spanish translations of their agreements. We also suspect the dealership routinely hides its used vehicles rental status, packs payments and forces consumers to enter into re-written contracts without letting them know they are "off the hook." Finally, we suspect the dealership and Wells Fargo back-date rewritten

purchase contracts as a regular business practice. We will be seeking class-wide relief to prohibit this conduct from being repeated.

Notwithstanding all this, our client would like to put this matter behind him and is willing to entertain a reasonable offer of rectification. We thank you in advance for your prompt attention to this matter. We look forward to resolving this matter with you in the near future and hope to hear from you shortly.

Cordially,

Parviz Darabi

WNB: pd
cc: Santiago Sanchez

9



**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

Bob Lewis Volkswagen
911 Capitol Expressway Auto Mall
San Jose, CA 95136
#648

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                    ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7003 1010 0005 6028 7804

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

Postage    $ .58
Certified Fee    2.65
Return Receipt Fee
(Endorsement Required)    2.15
Restricted Delivery Fee
(Endorsement Required)
Total Postage & Fees    $ 5.38

Sent To
Bob Lewis Volkswagen
Street, Apt. No.;
or PO Box No.  911 Capitol Expressway Auto Mall
City, State, ZIP+4  San Jose CA 95136

PS Form 3800, June 2002    See Reverse for Instructions

7003 1010 0005 6028 7804



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Wells Fargo Auto Finance
c/o CSC-Lawyer Inc Service
2730 Gateway Oaks Dr.
Suite 100
Sacramento, CA 95833

2. Article Number
(Transfer from service label)

7003 1010 0005 6028 7798

PS Form 3811, February 2004    Domestic Return Receipt

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
Levili Cross    FEB 2 8 2008

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No
#640

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

102595-02-M-1540

**U.S. Postal Service**
**CERTIFIED MAIL. RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

O F F I C I A L    U S E

| | |
|---|---|
| Postage | $ .58 |
| Certified Fee | 2.65 |
| Return Receipt Fee (Endorsement Required) | 2.15 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 5.38 |

Sent To
Wells Fargo Auto Finance
Street, Apt. No.; or PO Box No. 2730 Gateway Oaks Dr. Suite 100
City, State, ZIP+4 Sacramento, CA 95833

PS Form 3800, June 2002    See Reverse for Instructions

7003 1010 0005 6028 7798

**JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
Santiago Sanchez, an individual

## DEFENDANTS
Wells Fargo Auto Finance, Inc.; and DOES 1 through 100, inclusive

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

Santa Clara, CA

County of Residence of First Listed Defendant **Delaware, PA**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Parviz Darabi, Esq.
Law Offices of Parviz Darabi
500 Airport Blvd., Suite 100
Burlingame, CA 94010
650-343-5357

Attorneys (If Known)
Donald J. Querio, State Bar No. 54367
Mary Kate Sullivan, State Bar No. 180203
Peter H. Bales, State Bar No. 251345

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury – Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury – Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 690 Other | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | **LABOR** | [ ] 861 HIA (1395ff) | [ ] 810 Selective Service |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/Exchange |
| [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Mgmt. Relations | [X] 863 DIWC/DIWW (405(g)) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 196 Franchise | | | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | [ ] 864 SSID Title XVI | [X] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | [ ] 790 Other Labor Litigation | **FEDERAL TAX SUITS** | [ ] 892 Economic Stabilization Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | **Habeas Corpus:** | [ ] 791 Empl. Ret. Inc. Security Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/Accommodations | [ ] 530 General | **IMMIGRATION** | [ ] 871 IRS – Third Party 26 USC 7609 | [ ] 894 Energy Allocation Act |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | [ ] 462 Naturalization Application | | [ ] 895 Freedom of Information Act |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities – Employment | [ ] 540 Mandamus & Other | [ ] 463 Habeas Corpus – Alien Detainee | | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities – Other | [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 440 Other Civil Rights | [ ] 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [ ] 1 Original Proceeding
- [X] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. Section 1640(e)

Brief description of cause:
Amongst other claims, Plaintiff alleges a violation of TILA against lender relating to auto purchase.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)
[ ] SAN FRANCISCO/OAKLAND    [X] SAN JOSE

DATE 6/11/08

SIGNATURE OF ATTORNEY OF RECORD

NDC-JS44